JOHN SONNICHSEN *v*. BARBARA H. STREETER ET AL.

CIRCUIT COURT                                          NINTH CIRCUIT
FILE NO. CV 9-659-2783

Memorandum filed December 11, 1967

*George E. McGoldrick,* of New Haven, for the plaintiff.

*William P. Lage,* of Madison, for the named defendant.

*Marshall N. Dudley,* of Guilford, for the defendant Pattee, Inc.

KOSICKI, J.   The plaintiff, by writ and complaint dated August 2, 1965, and returnable on the first Tuesday in September, 1965, sued the defendants on an instrument, exhibit A, dated April 7, 1964, reading as follows: "For value received, I Barbara H. Streeter, individually and as agent for Pattee, Inc. promise to pay to John Sonnischsen of the Town of Madison the sum of Nine Hundred and Ten ($910.00) Dollars as a refund of a portion of Commission, being a part of the sum of $3,000.00 retained by Pattee, Inc. which said sum was a deposit on the purchase of property of John Sonnichsen and Hyman B. Birnbaum located in Madison, Connecticut.   And said deposit was not delivered at the time of closing at the Office of Attorney Marshall Dudley, but was retained by said Pattee, Inc." It was signed "Barbara H. Streeter, Individually and as agent for Pattee, Inc."

The complaint alleged that the instrument was a promissory note for $910, signed by defendant Streeter individually and as agent for defendant Pattee, Inc., hereinafter referred to as Pattee; and that the sum had not been paid, despite plaintiff's demands.   These allegations, excepting that of nonpayment, were denied by the defendants.   In addi-

tion, special defenses were filed. Defendant Streeter claimed that the instrument was signed by her under duress, without consideration, upon false representations of the plaintiff and without authority or consent of the defendant Pattee. She also counterclaimed, asking damages for injuries caused to her by the plaintiff's cause of action, the trouble and expense brought on thereby, the attachment of her banking accounts, totaling $483.32, and the plaintiff's subjecting her to humiliation and obloquy and damaging her personal and business reputation through his conduct and representations. Although inartificially drawn, the counterclaim, read together with the special defenses, contains substantially the allegations necessary to support a claim against the defendant for the maintenance of a vexatious suit.

The special defenses of Pattee also allege duress of defendant Streeter, lack of authority on her part to bind Pattee, absence of consideration and misrepresentations made by the plaintiff and relied on by defendant Streeter. Pattee also counterclaimed for damages or recovery by setoff. This counterclaim was not pursued on trial or in the brief, except by way of setoff, and in the view the court takes of this matter, it need not be given further consideration.

The following facts are found. Mrs. Streeter has been a licensed real estate broker in Connecticut since October, 1964. From October, 1963, and in April, 1964, she was employed by Pattee in the capacity of selling real estate. She was not an officer of the corporation, nor was she authorized to obligate the corporation, either expressly or by the conduct or representation of Pattee that she had the authority to do so. On April 7, 1964, she represented Pattee at a real estate closing at the office of the plaintiff's then attorney. The purpose was to effectuate a sale of real estate owned by the plain-

tiff and his joint owner Dr. Birnbaum to the buyers, John S. and Mary B. Walton. The sales agreement was carried out and the transaction closed. No issue is raised concerning this transaction except in certain collateral and unrelated aspects.

Before the above closing, the plaintiff had inquired of Mrs. Streeter whether she had brought with her the check for $3000 which was retained by Pattee as the deposit by the buyers and also represented the amount of the broker's commission. She informed him she had a receipt for the $3000, which she later turned over to the attorney representing the buyers. The plaintiff then threatened that the sale would not proceed unless Mrs. Streeter produced the check for $3000 or signed the instrument, exhibit A, which the plaintiff dictated to her while she typed the text. This incident took place in a separate room in which only the plaintiff and Mrs. Streeter were present. The plaintiff told Mrs. Streeter that Pattee owed him $910 from a prior closing and he was going to get it or withdraw from the present sale; and, if he refused to go through with the sale, he informed her, she would lose her one-half of the broker's commission. Mrs. Streeter stated that she had no authority to sign for Pattee, knew nothing of the claimed debt, and was not empowered to sign any notes, checks or other documents obligating the corporation. She was assured by the plaintiff that she "would not be hurt personally" by signing the instrument. During all this time Mrs. Streeter was greatly distraught, and so emotionally upset that she was moved to tears. She tried to reach Mr. Pattee three or four times by telephone but was unable to do so because he was elsewhere at other real estate transactions.

The plaintiff's claim was based solely on a purported oral agreement concerning the amount of Pattee's real estate commission on the sale of real

estate of the plaintiff and his wife on July 26, 1963. This agreement to sell was in writing, dated May 10, 1963, signed by the sellers and buyers and witnessed by a representative of Pattee other than Mrs. Streeter. The total selling price was $23,500, and the broker's commission, to be paid by the sellers, was to be 6 percent of such price. The sale was completed and the commission of $1410 paid at the time of the closing, at which the plaintiff was represented by counsel. Later the plaintiff demanded of Pattee a refund of $910 on the ground that, preceding the agreement to sell, Pattee had failed to produce a customer who was willing to pay the asking price of $25,000 and the plaintiff agreed to sell only on condition that he would receive a net of $23,000, thus leaving only $500 for the payment of the brokerage commission. No such condition is found in the agreement of sale, nor elsewhere in the evidence. The written agreement contained the provision: "No representations, other than those expressed herein, are a part of this agreement."

It is an irrefutable conclusion that Mrs. Streeter had no express authority from Pattee to obligate Pattee by the instrument sued on. "The authority of an agent cannot be proven by the declarations of the agent." *E. Paul Kovacs & Co.* v. *Blumgarten,* 150 Conn. 8, 13; *Metropolitan Cleaners & Dyers, Inc.* v. *Tondola,* 114 Conn. 244, 246. Nor is there any credible evidence that she had apparent or implied authority to do so. "Apparent and ostensible authority is such authority as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe that the agent possesses. This authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency. It is essential to the application of the above general rule that two

important facts be clearly established: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." *Quint* v. *O'Connell,* 89 Conn. 353, 357, *Keeler* v. *General Products, Inc.,* 137 Conn. 247, 251. The burden of proving the apparent authority that the plaintiff claimed Mrs. Streeter possessed rested on him, and it is the court's conclusion that he failed to establish that essential fact. Even if, as the plaintiff claims, there was adequate evidence from which a fair inference of implied authority could be drawn, it would avail him nothing. It is an established principle that when two meanings are possible, an agreement is to be construed against the party who drew it. *Wall* v. *Wason,* 146 Conn. 32, 36.

Furthermore, there was no consideration which can be claimed for the purported note. "An agreement without consideration is a mere indulgence and unenforceable." *State ex rel. McClure* v. *Northrop,* 93 Conn. 558, 566. The threat of the plaintiff to refuse to proceed with the Walton sale, unless the instrument was signed as demanded by him, and the coercive measures exerted by him do not merit being regarded as some form of consideration sufficient in law. A broker is entitled to his commission when he has produced a customer ready, able and willing to purchase upon terms prescribed or accepted by the seller. *Martino* v. *Palladino,* 143 Conn. 547, 548; *Meagher* v. *Reeney,* 96 Conn. 116, 117; *Dworski* v. *Lowe,* 88 Conn. 555, 558. There can be no question that both defendants had performed and were entitled to the full commission, whether the plaintiff concluded the sale or not.

There remains to be discussed the plaintiff's claim as to whether the supposed antecedent debt, arising from the sale of the plaintiff's house in 1963, furnished consideration for the instrument sued on sufficient to make it enforceable against Pattee. General Statutes § 42a-3-408. Mrs. Streeter was in no way involved in that transaction. The oral agreement has been denied and, outside of the plaintiff's testimony, finds no support in the evidence. It is more probable than not that no such agreement had any valid existence. If, in that transaction, the plaintiff was not satisfied with the buyers' final offer, he could refuse to sell without obligating himself to anyone. *Iodice* v. *Rusnak*, 143 Conn. 243, 246; *Grillo* v. *Howe*, 4 Conn. Cir. Ct. 649. The written agreement signed by the plaintiff expressly excluded all representations other than those contained in the agreement. It is the conclusion of the court that under the circumstances of this case the claimed oral agreement, extrinsic to the writing, is legally ineffective to vary the terms of the writing. *Greenwich Plumbing & Heating Co.* v. *A. Barbaresi & Son, Inc.*, 147 Conn. 580, 589; *Nagel* v. *Modern Investment Corporation*, 132 Conn. 698, 700, 701; *Spivack* v. *Connecticut Smiles, Inc.*, 128 Conn. 146, 147.

On the issue of liability, it is decided that the plaintiff failed to prove his case against either defendant. It remains to consider whether defendant Streeter is entitled to any recovery under her counterclaim. We have already disposed of Pattee's counterclaim as having been abandoned; and it is no longer necessary to pass on the claimed setoff.

To entitle Mrs. Streeter to recovery, she must prove by a preponderance of evidence that the suit against her was without probable cause and malicious. Probable cause is always a question of law. "Probable cause is the knowledge of facts sufficient to justify a reasonable man in the belief that he has

reasonable grounds for prosecuting an action. *McGann* v. *Allen,* 105 Conn. 177, 186 . . . ." *Paranto* v. *Ball,* 132 Conn. 568, 571.

"A vexatious suit is a kind of malicious prosecution, differing principally because it is based upon a civil action whereas, with us, a malicious prosecution ordinarily implies the bringing of a criminal complaint. To establish the cause of action, both require proof of malice and want of probable cause. *Schaefer* v. *O. K. Tool Co., Inc.,* 110 Conn. 528 . . . ." *Calvo* v. *Bartolotta,* 112 Conn. 396, 397; *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 194, 195. The suit may be brought as a cause of action created by statute; General Statutes § 52-568; in which treble damages may be awarded; or it may be instituted under the common law, in which case the damages, if recoverable, must be compensatory. The suit may be maintained where the property of the plaintiff had been maliciously attached. *Whipple* v. *Fuller,* 11 Conn. 582, 584, 586.

Defendant Streeter has made no claim for treble damages under the statute; therefore, we need to determine only whether she is entitled to compensatory damages and, possibly, punitive damages. On the facts found, it is the court's conclusion that the suit against defendant Streeter was malicious and without probable cause. Where probable cause for the suit is lacking, malice may properly be inferred, since there is no evidence tending to rebut the presumption of malice. *Zitkov* v. *Zaleski,* 102 Conn. 439, 446. It is also determined that, since the nonliability of this defendant has already been decided, it is res judicata as between the parties; and the remaining issue is whether Mrs. Streeter may recover in this same action, on her counterclaim, or must she resort to a new action against the plaintiff to demand her damages. There appears

to be no practical need for further litigation, and justice will best be served if the residuum of issues be terminated in the present suit. On the ground of public policy and to prevent a multiplicity of actions, equity may bar further litigation of a cause of action which has already been adjudicated. *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 195.

Where malice has been proved, as we find to be the case here, the injured party is entitled to recover not only compensatory damages for the injuries suffered, such as humiliation, loss or injury to business or property, interference with a gainful occupation, and the like, but exemplary or punitive damages as well. The latter are not to punish the plaintiff herein but to allow Mrs. Streeter to recover for her injuries in defending the present suit, including counsel fees, but exclusive of taxable costs. *Doroszka* v. *Lavine,* 111 Conn. 575, 578; *McGann* v. *Allen,* 105 Conn. 177, 184; *Seidler* v. *Burns,* 86 Conn. 249, 251. Our courts are familiar with the minimum fee schedules applicable to suits of this kind and do not require expert testimony to assist them. "In cases like the present one, there is no fixed rule of damages as in an action of contract. The object is the remuneration for a personal injury which is not capable of an exact cash valuation." *Seidler* v. *Burns,* supra.

For the injuries suffered by Mrs. Streeter in the garnishment of her bank accounts, her humiliation, the adverse affect on her credit, business and profession, and the cruel impact on her emotions, she is entitled to recover damages of $250. The trial lasted approximately a day and a half, preceded by preparation by counsel and followed by briefs. Counsel fees are awarded in the amount of $200.

Judgment may enter for each defendant on the complaint and for the plaintiff on the counterclaim and setoff of defendant Pattee, Inc.; judgment may enter for defendant Barbara H. Streeter to recover of the plaintiff, on her counterclaim, damages in the amount of $450.