Dennis ROLON, Plaintiff,

v.

Robert HENNEMAN and Ari Moskowitz, Defendants.

No. 02 CIV. 6556(CM).

United States District Court, S.D. New York.

Aug. 2, 2006.

Michael Howard Sussman, Goshen, NY, for Plaintiff.

John F. O'Reilly, Hitsman Hoffman & O'Reilly LLC, Elmsford, NY, Brian S. Sokoloff, Miranda Sokoloff Sambursky Slone Verveniotis LLP, Mineola, NY, for Defendants.

**ORDER AND DECISION GRANTING
DEFENDANT ARI MOSKOWITZ'S
MOTION FOR JUDGMENT ON
THE PLEADINGS**

MCMAHON, District Judge.

Plaintiff Dennis Rolon, a police officer in the Town of Wallkill, filed this § 1983 action against Acting Police Chief Robert Henneman and Sergeant Ari Moskowitz for violating his Fourteenth Amendment right to due process by bringing false disciplinary charges and "bearing false witness" against him.

By an Order and Decision dated September 28, 2005, this Court granted Defendant Henneman's motion for judgment on the pleadings, dismissing the action against him. Defendant Moskowitz, having recently returned from active military duty, now moves for judgment on the pleadings on the grounds of res judicata, absolute and/or qualified immunity, and failure to state a claim.

**Facts**

The relevant facts, as alleged in the Complaint and documents incorporated by reference therein, are as follows:

Plaintiff has worked as a law enforcement officer since 1989, and has served as a police officer in Wallkill, New York, since 1997. Complaint ("Cplt.") ¶ 5; Arbitration Opinion & Award ("Arbitration Op.") at 4. At the time this action was filed, plaintiff was the most highly decorated officer in the Wallkill Police Department. Cplt. ¶ 6; Arbitration Op. at 4.

In April 2000, the Town of Wallkill brought disciplinary charges against Rolon. In May 2000, Henneman was appointed Acting Chief of the Town of Wallkill Police Department. Cplt. ¶ 7. Henneman initiated additional disciplinary proceedings against plaintiff in August 2000, charging him with nine acts of misconduct, pursuant to fourteen specifications. Cplt. ¶¶ 8, 10. "Several of the incidents of misconduct directly involved allegations, unwitnessed by Henneman and reported to him by defendant Moskowitz." Cplt. ¶ 9. Pursuant to the August 2000 Notice of Discipline, plaintiff was suspended without pay pending a determination of the charges. Arbitration Op. at 7.

In May 2000, Rolon filed a federal lawsuit in connection with the April 2000 charges, naming then-Sergeant Robert Henneman, as well as the Town of Wallkill, Oscar Dino (Chairman of the Wallkill Police Commission), James Coscette (then-Chief of Police), and Thomas Nosworthy (Town Supervisor)—but not Moskowitz as a defendants. Cplt. ¶ 11. He did not thereafter amend his Complaint to assert claims against Moskowitz arising out of the August 2000 charges. The parties to the May 2000 suit reached a settlement on January 23, 2001, which was entered by Judge Conner of this Court. Rolon agreed to a general release of claims arising from the April and August 2000 disciplinary actions, in exchange for the sum of $85,000.00. Cplt. ¶ 12; Arbitration Op. at 6. Rolon's discharge of claims did not reach the issue of plaintiff's entitlement to back pay; rather, the parties agreed to submit this issue to arbitration. Arbitration Op. at 6, n. 3.

During the subsequent arbitration hearings, which were held on fourteen days between January 24 and August 31, 2001, the Arbitrator considered the merits of the disciplinary charges brought against plaintiff. Cplt. ¶ 15. On February 27, 2001, during Moskowitz's cross-examination, the Arbitrator directed him to produce his personal notebooks for the period February 1 through August 23, 2000. Cplt. ¶ 16; Arbitration Op. at 17. Moskowitz responded by leaving the hearing, explaining that he had taken the notebooks home during

lunch. Cplt. ¶ 17. Moskowitz never returned with the notebooks, and the Town refused to subpoena them. Cplt. ¶ 18; Arbitration Op. at 17. As a result, the Arbitrator struck Moskowitz's testimony in its entirety. Cplt. ¶ 20.

In his Opinion and Award issued on February 15, 2002, the Arbitrator found that neither Henneman nor Moskowitz provided truthful or credible testimony, and that each falsified his contact with plaintiff to enhance his own role and reputation with the Town Police Commission, further his own career, and settle personal grudges against Rolon. Cplt. ¶ 15.

The Arbitrator ultimately found plaintiff not guilty on all but three charges, ordered that he be reinstated to active duty, and awarded him full back pay and restoration of all fringe benefits for the entire period of his suspension.[1] Arbitration Op. at 58–59.

In this action, plaintiff contends that defendants' initiation of false disciplinary proceedings and false testimony caused him humiliation, emotional distress and economic loss. Cplt. ¶¶ 28, 30. Since he was awarded full back pay, his economic loss is limited to the loss of predictable overtime pay. Plaintiff seeks relief under 42 U.S.C. § 1983 for violations of his Fourteenth Amendment right to due process.

On May 23, 2005, Defendant Henneman moved to dismiss the Complaint under Rule 12(c). By an Order and Decision dated September 28, 2005, I granted Henneman's motion, finding him absolutely immune to the claims asserted against him.

With respect to Defendant Moskowitz, the case was put on the suspense calendar pending his return from active military duty.

Moskowitz now moves for a judgment on the pleadings pursuant to Rule 12(c). For the reasons discussed below, Moskowitz's motion is granted.

## Standard of Review

A motion for judgment on the pleadings pursuant to Rule 12(c) is properly granted where "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Serv., Inc. v. Int'l Union, United Plant Guard Workers of Am.*, 47 F.3d 14, 16 (2d Cir.1995). This standard is the same as that applicable to a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Nat'l Ass'n of Pharm. Mfrs. v. Ayerst Lab.*, 850 F.2d 904, 909 n. 2 (2d Cir.1988).

A court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim only "when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Phillip v. University of Rochester*, 316 F.3d 291, 293 (2d Cir.2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Kaltman–Glasel v. Dooley*, 156 F.Supp.2d 225, 226 (D.Conn.2001). The function of the Court is not to weigh the evidence that may be presented at trial. Instead, the Court must determine if the claims are legally sufficient. *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985); *see also King v. Simpson*, 189 F.3d 284, 287 (2d

---

**1.** The three charges on which Rolon was found guilty included Charge II, Specification 2: failure to timely comply with directives from Acting Chief Henneman ordering Rolon to move his vehicle from the spot in which it was parked; Charge III, Specification 1: failure to timely respond to a written directive from Acting Chief Henneman ordering Rolon

to answer certain questions regarding an arrest he made on June 24, 2000; and Charge VII, Specification 1: preparation of a memorandum dated July 21, 2000 which disrespected Acting Chief Henneman by accusing him of "carelessness and stupidity." Arbitration Op. at 9–13, 58.

Cir.1999). The Court must construe all reasonable inferences in favor of the plaintiff and accept the allegations contained in the claims as true. *See Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999). Therefore, a court must evaluate whether the allegations in the complaint can sustain a cause of action under applicable law, and should grant the motion to dismiss only if the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995).

"In considering a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.* 937 F.2d 767, 773 (2d Cir.1991). Because both the Arbitrator's opinion and the January 2001 settlement were referenced in the Complaint, both may be considered without converting the motion to one for summary judgement.

## Discussion

Defendant Moskowitz, relying on the same papers submitted in support of Defendant Henneman's motion, moves to dismiss plaintiff's claims on the grounds of res judicata, absolute and/or qualified immunity, and plaintiff's failure to state a cognizable claim for denial of substantive due process rights.

The Court finds that plaintiff has failed to state a claim for either offering false testimony or initiating false disciplinary charges. Because the Court grants Moskowitz's motion for judgment on the pleadings on this ground, I need not reach the issue of res judicata, which involves, *inter alia*, complicated questions of whether plaintiff should have amended his complaint in the May 2000 action to include his claims against Moskowitz.

### A. *Plaintiff Fails to State a Claim for Offering False Testimony*

Plaintiff alleges that Moskowitz violated his Fourteenth Amendment right to due process and caused him to suffer humiliation and embarrassment by "[bearing] false witness against plaintiff as part of [his] intentional effort to have [plaintiff] fired from the Town of Wallkill Police Department." Cplt. ¶ 32. Defendant counters that, to the extent this claim relates to his testimony at the 2001 arbitration hearings, he is entitled to absolute immunity for any false testimony he may have given. He is not so entitled, but the claim must be dismissed in any event.

It is well established that testifying witnesses, including police officers, are entitled to absolute immunity from liability under § 1983 based on their testimony. *See Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *see also Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993); *White v. Frank*, 855 F.2d 956, 961 (2d Cir.1988). Indeed, in this Court's September 28, 2005 Order and Decision, I dismissed plaintiff's claims against Defendant Henneman on the basis of absolute testimonial immunity.

However, Moskowitz's testimony (unlike Henneman's) was struck in its entirety by the Arbitrator. Accordingly, there is no testimony to which immunity can attach. But there is also no testimony on which a false testimony claim can be based.

■ A strong presumption of regularity attaches to both judicial proceedings and arbitrations. *See, e.g., In re Worldcom, Inc. Sec. Litig.,* 2006 WL 709101, *4 (S.D.N.Y. March 21, 2006) (arbitration award is entitled to strong presumption of regularity). When testimony is stricken, the trier of fact is required to disregard it. Since Moskowitz's testimony was stricken, it could have had no impact whatsoever on the outcome of the arbitration. The Arbitrator chose to ignore it.

Of equal importance, the Arbitrator *did not believe* the statements Moskowitz made at the arbitration hearings. As the Complaint alleges, in his February 15, 2002 Opinion and Award, the Arbitrator declined to credit Moskowitz's testimony. Cplt. ¶ 15.

■ Because Moskowitz effectively did not testify, plaintiff suffered no harm as a result of any false statements Moskowitz might have made. Thus, the Complaint fails to state a claim against him for "bearing false witness" at the arbitration hearings.

## C. Plaintiff Fails to State a Claim for Falsely Accusing him of Misconduct

The Complaint, which alleges only a cause of action for "bearing false witness," is unclear to say the lease. It appears, however, that plaintiff's real claim against Moskowitz is not for testifying falsely at the arbitration hearings, but for lying to Henneman about alleged misconduct on Rolon's part, which led to the preferment of disciplinary charges against Rolon and, ultimately, to his suspension. Plaintiff alleges that Henneman charged him with numerous acts of misconduct that were "unwitnessed by Henneman and reported to him by defendant Moskowitz," and that, "Plaintiff suffered emotional distress as a consequence of the false accusations made against him through the disciplinary charges brought by Henneman at the instance of Moskowitz." Cplt. ¶¶ 8, 9, 30. In his opposition papers, plaintiff characterizes Moskowitz's conduct in this regard as malicious prosecution and/or fabrication of evidence.

Despite the Court's attempt to read the Complaint liberally, however, the inescapable conclusion is that plaintiff fails to state a claim against Moskowitz for either malicious prosecution or fabrication of evidence (the only two causes of action that could possibly be read into the Complaint).

### 1. Malicious Prosecution

Moskowitz argues that he is entitled to absolute immunity for allegedly initiating disciplinary proceedings against plaintiff. Plaintiff spends several pages of his opposition papers arguing that, unlike Henneman–who actually preferred the disciplinary charges against plaintiff-Moskowitz is not entitled to absolute immunity because he was only a complaining witness.

■ Plaintiff is correct that a police officer who is liable for malicious prosecution by virtue of his role as a "complaining witness," is not entitled to absolute immunity. Rather, he may be entitled to qualified immunity. *See Malley v. Briggs,* 475 U.S. 335, 340–42, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *White,* 855 F.2d at 956. However, plaintiff puts the cart before the horse: because plaintiff does not state a cognizable claim for malicious prosecution, the Court cannot reach the question of whether Moskowitz is immune from liability.

■ To state claim for malicious prosecution under § 1983, plaintiff must prove the same four elements required to state a claim for malicious prosecution under New York state law: (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding

in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; (4) and actual malice as a motivation for defendant's actions. *Jocks v. Tavernier,* 316 F.3d 128, 136 (2d Cir.2003). A claim for malicious prosecution under § 1983, however, also requires a post-arraignment deprivation of liberty that rises to the level of a constitutional violation. *Id.* Only those malicious prosecution claims that implicate Fourth Amendment rights can be brought under § 1983. *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

In *Washington v. County of Rockland,* 373 F.3d 310 (2d Cir.2004), the Second Circuit rejected the contention that corrections officers who were charged in an administrative proceeding, and who were never taken into custody, imprisoned, physically detained or seized within the traditional meaning of the Fourth Amendment, stated a viable malicious prosecution claim under § 1983. The Court explained,

> Although the disciplinary charges included offenses for which plaintiffs could have been criminally prosecuted had they been found guilty in the administrative proceeding, plaintiffs were never the subjects of an actual criminal prosecution. Moreover, although plaintiffs were suspended without pay for thirty days pending the disposition of the disciplinary charges, no seizures or restriction of their personal liberty occurred.

*Id.* at 316.

■ Plaintiff, like the corrections officers in *Washington,* was subject to discipline based on ostensibly false charges. However, also like the corrections officers in *Washington,* plaintiff did not face criminal charges. He was not arrested or otherwise detained. His Fourth Amendment rights were not implicated in anyway. Therefore, like the corrections officers in

*Washington,* plaintiff does not state claim for malicious prosecution under § 1983.

### 2. *Fabrication of Evidence*

Alternatively, plaintiff asserts a § 1983 claim against Moskowitz for fabrication of evidence. Plaintiff alleges that Moskowitz falsely accused him of misconduct, leading to the preferment of disciplinary charges against him. As a result, plaintiff was suspended and suffered a loss of predictable overtime pay.

The Second Circuit has only recognized a constitutional right "not to be deprived of *liberty* as a result of the fabrication of evidence by a government officer acting in an investigation capacity." *Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir.2000) (emphasis added); *see also Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (2d Cir. 1997). As discussed above, however, plaintiff does not allege that he suffered a deprivation of liberty. He alleges that he was deprived of property–his job (temporarily) and overtime pay that he otherwise would have earned.

■ Without citing any authority whatsoever, plaintiff asserts in his opposition brief, "If the deprivation of liberty as a result of such fabrication violates the due process clause, so must the same kind of action which results in the deprivation of property be a violation of the same provision." Pl.'s Mem. in Opp. at 6. Plaintiff's conclusory statement notwithstanding, the Second Circuit has never recognized a constitutional right to be free from fabrication of evidence outside of the criminal context. Indeed, no case in this Circuit has expressly addressed whether there exists a constitutional right not to be deprived of *property* on the basis of fabricated evidence. The *Zahrey* Court effectively closed the door to such a possibility, however, by holding that there is no constitutional right to be free from the fabrication of evidence,

"in and of itself"; rather, the offense only rises to a constitutional violation if one is deprived of his *liberty* as a result of the fabrication. *Henry v. City of New York,* 2003 WL 22077469, *4 (S.D.N.Y. Sept.8, 2003) (citing *Zahrey,* 221 F.3d at 348).

In considering Rolon's claim, it is also critical to note that the right recognized in *Zahrey* has been held *not* to be a generalized Fourteenth Amendment due process right. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process,' must be the guide for analyzing these claims.'" *Albright,* 510 U.S. at 273, 114 S.Ct. 807 (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). As the Supreme Court has noted, "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Id.* at 274, 114 S.Ct. 807. Thus, contrary to plaintiff's contention, substantive due process–which has been limited to matters relating to marriage, family, procreation and bodily integrity"... may not furnish the constitutional peg on which to hang" the offense here alleged. *Id.* at 271–72, 114 S.Ct. 807. Rather, a § 1983 claim for fabrication of evidence, like a claim for malicious prosecution, arises under the Fourth Amendment. The Fourteenth Amendment only serves as the vehicle by which the Fourth Amendment is applied to the States. *Accord, Chweya v. Baca,* 130 Fed.Appx. 865, 868 (9th Cir. 2005) (recognizing the Fourth Amendment right not to be prosecuted on the basis of fabricated evidence).

The Court recognizes that, in *Ricciuti,* the Second Circuit characterized the fabrication of evidence as an unacceptable "corruption of the truth-seeking function of the trial process." *Ricciuti,* 124 F.3d at 130. This language suggests that the right to be free from fabrication of evidence arises under the Sixth, not the Fourth, Amendment. However, *Ricciuti* is distinguishable from both *Zahrey* and the present case in that it involves a *post-arrest* manufacture of evidence. In other words, Ricciuiti alleged, not that he was arrested, or otherwise deprived of his liberty, on the basis of fabricated evidence, but rather that, after he was arrested, evidence was manufactured by the police to obtain a conviction. In this way, Ricciuiti's Sixth, rather than Fourth, Amendment rights were implicated. By contrast, *Zahrey* involved a *pre-arrest* false accusation (which led to the arrest). This is far more analogous to the present case, where plaintiff alleges that Moskowitz falsely "told on him," thus leading Henneman to prefer charges against him.

Because plaintiff was not arrested, detained, indicted, or otherwise subjected to a criminal prosecution, his Fourth Amendment rights were not implicated. Accordingly, plaintiff fails to state claim for deprivation of liberty as a result of Moskowitz's alleged fabrication of evidence.

Of course, plaintiff's attempt to expand the contours of the *Zahrey* doctrine to a completely new constellation of facts is understandable- and not illogical- despite the fact that *Zahrey* describes a Fourth rather than a Fourteenth Amendment right. However, I am constrained to note that, even if plaintiff were to succeed in convincing this Court that a right exists to be free from false accusations when no liberty interest is implicated, Rolon could not prevail against Moskowitz. Because such a right, which has not been recognized by either the Supreme Court or the Second Circuit, certainly was not "clearly established" in 2000 when Moskowitz made

the allegedly false accusations, the doctrine of qualified immunity would protect Moskowitz from liability. *See Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211–212 (2d Cir.2003); *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991). No reasonable police officer in Moskowitz's position would have thought that he was violating the constitution by making a report to his employer—a report that, if credited, would lead only to administrative charges (which do not implicate any Fourth Amendment interests).

Accordingly, Moskowitz's motion for judgment on the pleadings must be granted, and the Complaint against him dismissed. This does not mean that the Court condones Moskowitz's conduct-indeed, it was truly contemptible. It simply means that plaintiff must avail himself of other means of redress.

### Conclusion

For the foregoing reasons Defendant Moskowitz's motion for judgment on the pleadings pursuant to Rule 12(c) is granted.

The Clerk of the Court is directed to enter judgment in favor of Defendant Moskowitz and to close the file.

This constitutes the decision and order of the Court.